
IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

JOSEPH BROME JACKSON,

    Plaintiff,

vs.

NATASHA PORTER; DIANE PASLEY; and DWIGHT NEWBOULD,

    Defendants.

CIVIL ACTION NO.: CV209-120

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Joseph Jackson ("Plaintiff"), who is currently incarcerated at the Federal Correctional Institution-Federal Satellite Low Camp in Jesup, Georgia, filed a cause of action pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). Defendants filed a Motion to Dismiss and a Motion for Summary Judgment. Plaintiff filed a Response, and Defendants filed a Reply. For the reasons which follow, Defendants' Motion to Dismiss should be **GRANTED** and Defendants' Motion for Summary Judgment should be **GRANTED** in part and **DENIED** in part.

## STATEMENT OF THE CASE

Plaintiff asserts that he filed an Administrative Remedy Request against Defendant Porter. Plaintiff contends he later witnessed Defendants Porter and Pasley having a conversation and concluded that these Defendants reached an agreement to

AO 72A
(Rev. 8/82)

take adverse action against him because Plaintiff had filed a grievance against Defendant Porter. Plaintiff asserts that Defendant Porter convinced Defendant Pasley to search Plaintiff's cell in retaliation for Plaintiff filing a grievance against Defendant Porter. Plaintiff also contends that he and Defendant Pasley went to Defendant Newbold's office, and he was told to wait outside. Plaintiff alleges he saw Defendant Newbold remove an incident report from his printer, and Defendant Pasley signed it. According to Plaintiff, Defendant Pasley told him that she was sorry she let Defendant Porter "get her into this mess" and that she did not want to file the incident report, but she had to because Defendant Newbold told her to do so. (Doc. No. 1, p. 5). Plaintiff avers that Defendants Porter, Pasley, and Newbold conspired to retaliate against him.

Defendants contend that Plaintiff did not exhaust his administrative remedies prior to the filing of his Complaint as to Counts 3 and 4 of his Complaint, and, accordingly, these claims should be dismissed. Defendants assert that they are entitled to summary judgment on Plaintiff's remaining conspiracy and retaliation claims on the merits, or, in the alternative, on the basis of qualified immunity.

## STANDARD OF REVIEW

The determination of whether an inmate exhausted his available administrative remedies prior to filing a cause of action in federal court is a matter of abatement and should be raised in a motion to dismiss. Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). "Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Id. (internal punctuation and citation omitted). A

2

judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id.

## DISCUSSION AND CITATION TO AUTHORITY

Defendants assert that Plaintiff did not exhaust his available administrative remedies as to Counts 3 and 4 of his Complaint prior to filing this cause of action. Defendants allege that Plaintiff filed Administrative Remedy Requests on April 3, 2008, and on May 19, 2008, in which he alleged that Defendant Porter acted inappropriately in her dealings with Plaintiff's wife and that Defendants Porter, Pasley, and Newbold retaliated against him by conspiring to search his cell and write a false disciplinary report against him, respectively. However, Defendants allege, Plaintiff failed to file an Administrative Remedy Request asserting that Defendant Newbold furthered the conspiracy by raising his criminal history of violence from minor to serious or that Defendant Newbold "ransacked his cell" to discourage him from filing future administrative remedies (Counts 3 and 4 of Plaintiff's Complaint). (Doc. No. 37, p. 7).

Plaintiff avers that he exhausted his administrative remedies as to Counts 3 and 4 of his Complaint by alerting the Unit Manager and later the Camp Administrator that Defendant Newbold increased his prior history of violence. Plaintiff asserts that the Bureau of Prisons only requires an inmate to file a written complaint concerning an incident, which he fulfilled by filing an Administrative Remedy Request on May 19, 2008. Plaintiff also asserts that Defendant Newbold's threats of retaliation against him for filing grievances made the administrative remedies unavailable to him.

Where Congress explicitly mandates, prisoners seeking relief for alleged constitutional violations must first exhaust inmate grievance procedures before filing suit

AO 72A
(Rev. 8/82)

in federal court. See Porter v. Nussle, 534 U.S. 516, 524 (2002). 42 U.S.C. § 1997e(a) states, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." In Porter, the United States Supreme Court held that exhaustion of available administrative remedies is mandatory. Porter, 534 U.S. at 523. The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 541 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Inmates being housed in a Bureau of Prisons' facility must exhaust his administrative remedies prior to filing a cause of action in federal court. "The Bureau of Prisons has established regulations that set forth the procedures that a prisoner must follow before seeking relief from a district court." Gonzalez v. United States, 959 F.2d 211, 212 (11th Cir. 1992). According to these regulations, an inmate is required to seek an informal resolution of an issue. 28 C.F.R. § 542.13(a). If an informal resolution cannot be had, the inmate can file a grievance with the Warden ("BP-9"), and the Warden has 20 days to respond. 28 C.F.R. § 542.14(a). "The inmate shall place a

single complaint or a reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2). If the inmate is not satisfied with the Warden's response, he may file an appeal with the Regional Director ("BP-10"). 28 C.F.R. § 542.15(a). Finally, if the inmate is not satisfied with the Regional Director's response, he can file an appeal with the General Counsel for the Federal Bureau of Prisons ("BP-11"). Id.

Plaintiff filed Administrative Request Number 488478-F1 on March 28, 2008, in which he alleged that Defendant Porter investigated him in the community and made up reasons his wife could not visit him. (Doc. No. 37-2, p. 26). Plaintiff filed all necessary appeals in this Administrative Remedy. On May 6, 2008, Plaintiff filed Administrative Request Number 494014-F1 against Defendants Porter, Pasley, and Newbold; according to Plaintiff, Defendants Porter, Pasley, and Newbold conspired together to subject him "to a series of violation (sic) of certain of his constitutional right(s) and privileges as a means of direct retaliation" because he filed a BP-9 against Defendant Porter. (Doc. No. 37-2, p. 35). In this Administrative Request, Plaintiff asserted a specific incident of Defendants' alleged conspiracy and retaliation—the issuance of a disciplinary report against him. (Id. at p. 36). Likewise, Plaintiff pursued all necessary appeals of this Administrative Remedy. Accordingly, there is no issue that Plaintiff exhausted his administrative remedies as to his general contentions that Defendants conspired to retaliate against him.

However, it does not appear that Plaintiff exhausted his available administrative remedies as to his specific contentions that Defendant Newbold retaliated against him by raising his criminal history of violence from minor to serious or that Defendant

5

Newbold "ransacked his cell" to discourage him from filing future administrative remedies.

While "available administrative remedies" does not mean that the remedies must be adequate, it does mean that the exhaustion process actually must be available to the inmate. Alexander v. Hawk, 159 F.3d 1321, 1326 (11th Cir. 1998). Indeed, in determining whether a plaintiff has exhausted his administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were *available* and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (emphasis added). There is little case law addressing what constitutes "available" administrative remedies. In Hall v. Richardson, 144 F. App'x 835 (11th Cir. 2005), the Eleventh Circuit chose not to address the issue of whether the denial of grievance forms by jail officials would render administrative remedies "unavailable." 144 F. App'x at 836. Instead, that court merely noted that "[t]he Supreme Court has explained that 'available' refers to 'the possibility of some relief for the action complained of.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). Several courts have found rare circumstances in which the otherwise mandatory exhaustion requirement may be excused or in which administrative remedies are not truly "available" within the meaning of the Prison Litigation Reform Act ("PLRA"). See, e.g., Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (holding that inmate's claims were improperly dismissed where district court failed to consider allegations that inmate was denied grievance forms); Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (finding that exhaustion defense is estopped if prison officials hinder inmate in exhausting administrative remedies); Aceves v. Swanson, 75

AO 72A
(Rev. 8/82)

F. App'x 295, 296 (5th Cir. 2003) (finding remedies are "unavailable" where prison officials refuse to give inmate grievance forms despite inmate's requests).

Plaintiff alleges that Defendant Newbold changed his history of violence on March 16, 2009, and ransacked his cell on April 9, 2009. (Doc. No. 45, p. 5). Thus, Defendant Newbold could not have been put on notice of his alleged violations of Counts 3 and 4 of Plaintiff's Complaint by Plaintiff filing an Administrative Remedy Request almost one (1) year prior to these alleged events. The undersigned does not find credible Plaintiff's assertion that Defendant Newbold's alleged threats prevented him from filing administrative remedies after the incidents giving rise to Plaintiff's Complaint for two (2) reasons. First, Plaintiff states in his Response to Defendants' Motion that he exhausted his administrative remedies on all counts of his Complaint based on the administrative remedy request he filed on May 19, 2008, and, yet, in almost the same breath, Plaintiff states that Defendant Newbold threatened him with further retaliation if Plaintiff filed any more administrative remedy requests. Secondly, Plaintiff was able to file administrative remedy requests after May 19, 2008, as he filed a request to have vegetables under the religious diet program (Doc. No. 37-2, p. 16), and he filed several requests alleging staff misconduct well after the date he filed his Complaint. (Id. at pp. 18-20). Plaintiff's assertion that he could not file an administrative remedy asserting that Defendant Newbold retaliated against him by increasing his history of violence and by ransacking Plaintiff's cell is undermined. Defendants' Motion to Dismiss should be granted.

AO 72A
(Rev. 8/82)

7

## SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment "shall" be granted if "the movant[s] show[ ] that there is no genuine dispute as to any material fact and that the movant[s are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., ___ F. Supp.2d ___, 2011 WL 589830, at *2 (M.D. Fla. Feb. 18, 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving parties bear the burden of establishing that there is no genuine dispute as to any material fact and that they are entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving parties must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant[s are] entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a

light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

I.  **Conspiracy**

Defendants contend that Plaintiff did not see an agreement to retaliate against Plaintiff occur. Defendants aver that Plaintiff, by his own admission, reached the conclusion that Defendants Porter and Pasley agreed to retaliate against him without any evidence to support his conclusion.

Plaintiff responds that he has set forth evidence in support of his conspiracy claim, such as Defendant Pasley telling him she is sorry she let Defendant Porter get her involved in the situation and Defendant Newbold telling Plaintiff he ransacked his cell because Plaintiff filed an administrative remedy request.

"To establish a prima facie case of [a Bivens] conspiracy, a plaintiff must show, among other things, that defendants '"reached an understanding to violate [his] rights."' Id. (quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir.1988)). A "plaintiff does not have to produce a 'smoking gun' to establish the 'understanding' or 'willful participation' required to show a conspiracy, but must show some evidence of agreement between the defendants. Id. at 1283-84 (quoting Bendiburg v. Dempsey, 909 F.2d 463, 469 (11th Cir.1990)). "For a conspiracy claim to survive a motion for summary judgment a mere scintilla of evidence will not suffice; there must be enough of a showing that the jury could reasonably find for [the non-moving] party." Id. at 1284 (internal citation and punctuation omitted).

The evidence before this Court is that Plaintiff may have seen Defendants Porter and Pasley have a conversation and may have seen Defendant Pasley in Defendant

9

Newbold's office. However, Plaintiff did not hear any conversation between these Defendants, and, by his own assertion, Defendants Porter and Pasley "watched Plaintiff through the window of the office in a seemingly conspiratorial manner[.]" (Doc. No. 1, p. 4). The undersigned will not take the leap of logic Plaintiff wishes the Court take. At best, Plaintiff has set forth conclusory, vague assertions in support of his conspiracy claim, which he cannot do. See Fullman v. Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (noting that conclusory, vague, and general allegations of conspiracy are insufficient to maintain such a claim). This portion of Defendants' Motion should be granted.

II. **Retaliation**

Defendants assert that Plaintiff has not established a connection between the filing of an administrative remedy against Defendant Porter and Defendants' alleged retaliatory actions. Defendants allege that, while they interacted with Plaintiff during the time of the events he outlined in his Complaint, it was their duty and responsibility to do so. Defendant Pasley contends that she was not aware Plaintiff had filed an administrative remedy against Defendant Porter when she randomly searched Plaintiff's cell and that she asked Defendant Porter to bring her a battery for her radio, which is why the two were together on the date in question. Defendant Pasley asserts that she found a note in Plaintiff's locker during the search, and the contents of the note[1] caused her to write an incident report against Plaintiff as part of her job, not as retaliation. Defendant Newbold asserts that Defendant Pasley came into his office to type the

---

[1] The note stated that any correctional officer who found the note would become a party to a lawsuit. (See Doc. No. 37, p. 11).

10

incident report against Plaintiff because the printer in the officers' station was not working.

Plaintiff contends that a causal connection between "the conduct and the retaliatory acts may be alleged by chronology of events that creates a plausible inference of retaliation." (Doc. No. 45, p. 8). Plaintiff asserts that, because he and Defendants disagree about whether Defendants' actions were motivated by a desire to retaliate against him, there remains a genuine dispute as to a material fact. Plaintiff asserts that Defendants were aware of Plaintiff having filed administrative remedies. Plaintiff specifically asserts that Defendant Newbold "pressed" him to drop the grievances against Defendant Porter and all Defendants, and, when Plaintiff refused, Defendant Newbold made a statement which Plaintiff took as a threat. (Id. at p. 11).

"To state a First Amendment claim for retaliation, a prisoner need not allege violation of a separate and distinct constitutional right." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal citations omitted). Rather, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." Id. A prisoner can establish retaliation by demonstrating that the prison officials' actions were "the result of his having filed a grievance [or lawsuit] concerning the conditions of his imprisonment." Id.

Once defendants move for summary judgment, "the plaintiff may not respond simply with general attacks upon the defendant[s'] credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive." Crawford-El v. Britton, 523 U.S. 574, 600 (1998). The issue of intent is a question for the trier of fact. Direct evidence of an illegal

11

AO 72A
(Rev. 8/82)

motive will usually suffice to create a genuine issue of fact and preclude summary judgment. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995) (citing Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995)).

In her Affidavit, Defendant Porter admits that she is aware that Plaintiff filed an administrative remedy request alleging that she denied Plaintiff's wife visitation. (Doc. No. 37-3, p. 15). However, Defendants Pasley and Newbold do not admit they were aware of Plaintiff filing an administrative remedy against Defendant Porter or any other prison official. (Id. at pp.17-24). Defendant Porter declares that she did not instruct Defendant Pasley to search Plaintiff's cell, and, if she was in the housing unit on the date in question, it was as part of her duties as the compound officer. (Id. at p. 15).

Defendant Pasley avers that she was having problems with her radio on the date in question and asked Defendant Porter to bring her a battery for the radio. Defendant Pasley also avers that, when a correctional officer is working in a housing unit, the officer is expected to conduct random and unannounced cell searches. Defendant Pasley declares that she conducted a random search of Plaintiff's cell on the date in question and found a note which seemed to be a warning or threat to any official who searched his cell. Defendant Pasley states she went to speak to Defendant Newbold, who was the case manager for the housing unit, about the note she found in Plaintiff's cell. Defendant Pasley then went to speak with acting Lieutenant Wilfort, who called Plaintiff into his office, and Defendant Pasley wrote an incident report against Plaintiff for interfering with a staff member in the performance of duties. Defendant Pasley asserts that she went to Defendant Newbold's office to type the report after she discovered the printer in the officers' station was not working. (Id. at pp. 18-19).

12

Defendant Newbold declares that Defendant Pasley came to him for advice about the note she found during the search of Plaintiff's cell, and he advised her to bring the note to the lieutenant's attention. Defendant Newbold also declares that he typed the incident report while Defendant Pasley dictated what she wanted in the report and printed the report for her to sign. Defendant Newbold states he did not tell Defendant Pasley to write the report or what to put in the report. (Id. at p. 22).

In contrast, Plaintiff asserts that all Defendants were aware that he had filed a grievance against Defendant Porter and took action against him as a result. (Doc. No. 1-2, pp. 13-14; Doc. No. 45-1; Doc. No. 45-3). While the undersigned does not credit all of his citations to the record, Plaintiff has presented evidence sufficient to create a genuine dispute as to whether Defendants were aware Plaintiff had filed an administrative remedy and then took action against Plaintiff as retaliation. To determine otherwise would be to decide an issue which clearly should be determined by a jury at trial, not this Court on a summary judgment motion. This portion of Defendants' Motion should be denied.

### III. Qualified Immunity

Defendants contend that the threshold question is whether the facts, viewed in the light most favorable to Plaintiff, show that Defendants' conduct violated a constitutional right. Defendants acknowledge that the First Amendment forbids prison officials from retaliating against an inmate for exercising the right to free speech.

Qualified immunity protects a government official performing discretionary functions from suit in his individual capacity, so long as his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would

13

have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. The Supreme Court has established a two-part test to determine the applicability of qualified immunity: the court must determine whether plaintiff's allegations, if true, establish a constitutional violation, and whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001)[2]; Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).

Defendants are not entitled to a qualified immunity defense. Under Plaintiff's version of facts, Defendants retaliated against Plaintiff after he exercised his First Amendment rights. It was clearly established law at the time of the alleged retaliatory acts that prison officials' retaliatory actions against a prisoner who exercised his First Amendment rights is a violation of that prisoner's clearly established rights. This portion of Defendants' Motion should be denied.

---

[2] In Pearson v. Callahan, 555 U.S. 223, ___, 129 S. Ct. 808, 818 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

14

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED** and that Defendants' Motion for Summary Judgment be **GRANTED** in part and **DENIED** in part.

**SO REPORTED** and **RECOMMENDED**, this 30th day of March, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)